**Affirmed and Memorandum Opinion filed March 26, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00660-CR

---

**JESUS DANIEL GUERRA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1541672**

---

## M E M O R A N D U M   O P I N I O N

Appellant Jesus Guerra appeals his conviction for murder. A jury found appellant guilty and assessed his punishment at 15 years in prison and a $10,000 fine. In two issues, appellant contends the trial court erred in refusing to (1) grant a mistrial after the prosecutor commented on appellant's exercise of his right to remain silent and (2) dismiss the indictment in light of alleged prosecutorial misconduct. We affirm.

## Background

Appellant was charged with the murder of Demarcus Tucker. According to appellant's video-recorded statement to police, in the early morning hours of July 20, 2016, he was driving around in his truck looking to trade Xanax pills for crack cocaine. A man in a white t-shirt offered to help, and appellant drove the man to a couple of places to inquire about an exchange. At the second location, appellant dropped the man off at an intersection. After the man disappeared around a corner with appellant's Xanax, Tucker, whom appellant knew but not by name, approached appellant, who was still in his truck.

According to appellant, he and Tucker shook hands and spoke briefly before Tucker stuck his hands inside the truck, reaching for the pistol appellant kept on the seat under his leg. Appellant said that he always had the pistol in that position when driving around the neighborhood and Tucker knew this. Tucker reportedly told appellant he would shoot appellant in the head. Appellant said that he got his own hand on the gun first and the two struggled momentarily over the weapon before appellant managed to get his finger on the trigger and fire the pistol. Tucker fell to the ground. Appellant repeatedly referred to the incident as an attempted carjacking and claimed he acted in self-defense.

In his video-recorded statement, appellant initially told officers that he drove straight home after the incident, then picked up a friend and had a drink before being pulled over by a police officer. He later added that he and his friend drove back through the area where the shooting occurred, looking for the man in the white t-shirt who still had appellant's Xanax pills. After police told appellant there were inconsistencies in his statements and they knew he was omitting information, appellant called the officers back into the interview room and told them that immediately after the shooting, rather than heading straight home, he had sped off

2

looking for the man in the white t-shirt. He said that he also went into the corner store after the shooting asking after the man, later saw someone in a white t-shirt, and fired two shots at him. Appellant explained that he was in shock from the events and that the additional memories had just come back to him.

Area resident Johnnie Basey testified that on the morning in question, he saw a truck stop at the intersection and let a man out who then went toward the corner store. Another man then came from the store, walked over to the truck, and started talking with the man in the truck. Basey said that the two men were speaking audibly but were not yelling and did not appear to be arguing. The man outside the truck had gotten fairly close to the vehicle, so when the truck moved slightly forward, the man stepped back. Basey said that he turned away at that point but heard a shot fired just a moment later. The man who had been outside the truck then fell to the street. Basey did not observe the man outside the truck reach into the truck, and he did not see any struggle between the two men. The truck drove down the street, turned around, and came back through the intersection. Basey then called 911.

Dwayne Wolf, the deputy medical examiner for Harris County, performed an autopsy on Tucker. In doing so, he did not observe any soot, stippling, or other firearm residue on Tucker's hands that would have been consistent with Tucker having his hands on the pistol when it discharged.

Appellant's issues primarily concern statements the prosecutor made during closing arguments. During her opening statement, the prosecutor stated appellant had provided three different versions of events, and defense counsel acknowledged in her opening remarks that indeed appellant had remembered "more and more" as he was coming out of the shock of the events. In closing, defense counsel stated:

He admits that he shot out his back window. I mean, he admits to that.

He wasn't confronted with it. As he sat there and he thought about it, he knocked on the door and said, I wasn't truthful with you. I shot—I shot someone. I shot out my back window, rather. And you know what? That was true.

In her closing argument, the prosecutor responded by saying:

Defense got up here and told you that the defendant's words to the detectives were, I'm sorry for not being truthful to you. I'm sorry for not being truthful to you. That's what [defense counsel] said. And if you watch that statement, you will know that those words never escaped his mouth. He never apologized for not being truthful but in the converse, as soon as he made the third iteration of his story, he said, I don't want it to seem like I'm being deceitful. I'm being honest with you. He never apologized for not being truthful. He never apologized for lying to them. He wanted to continue the idea and the appearance that he was telling the truth. He never apologized for it **and he has not apologized for it even now.**

(Emphasis added.)

Defense counsel objected to this argument as a comment on appellant's failure to testify. The trial court agreed, sustained the objection, and instructed the jury to disregard "the last statement" as defense counsel requested. Defense counsel then moved for a mistrial, which the trial court denied. This ruling is the subject of appellant's first issue.

At another point in her closing argument, defense counsel referenced two people whom police officers had mentioned as people they had interviewed in their investigation but had not been called to testify:

The prosecutors have the burden of proof and the burden to disprove [self-defense]. So where's Herman? Where's Herman Celestine? Where's Ricky Jenkins? Where are all the other witnesses that these detectives interviewed? Why didn't they bring them to you? What would they have told you? You have a right to wonder why they weren't here and that should make you doubt right there.

4

Celestine was purportedly the man in the white t-shirt who left with appellant's Xanax. Appellant purportedly spoke to Jenkins in a confrontational manner in the corner store after the shooting.

In response, the prosecutor said in her closing argument:

> I want you to focus on the real story. Now, defense commented on why we don't have Ricky Jenkins here or why we don't have Herman Celestine here. And I want to ask you, if a man shot at you while you were running away, would you be scared? If a man came in the store and threatened you, would you be scared? Absolutely. And what we know about Third Ward is that it's a scary place to be. So make no mistake. There is nothing by the way of anyone that will change this defendant's story and make it true.

Appellant did not object to these statements when made, but after the jury retired to deliberate, appellant moved to dismiss the indictment against him, arguing that the statements amounted to prosecutorial misconduct, particularly because Jenkins was at that time in jail on a bench warrant issued in this case. Defense counsel further asserted that the prosecutor had not informed the defense of Jenkins's status and a different prosecutor told defense counsel that Jenkins was not being called because he had been arrested for robbery during the pendency of appellant's case. The trial court denied the motion. This ruling is the subject of appellant's second issue.

### *Motion for Mistrial*

**Standards of review.** In his first issue, appellant contends that the trial court erred in denying his motion for mistrial after the prosecutor referenced his failure to testify in closing argument. A mistrial is appropriate only in "extreme circumstances" for a narrow class of prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We review a trial court's denial of a mistrial for an abuse of discretion. *Id*. We view the evidence in the light

5

most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* We must uphold the ruling if it was within the zone of reasonable disagreement. *Id.*

Specifically, in regard to jury argument, mistrial is the proper remedy only when improper argument is so inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We generally presume on appeal that the jury followed the trial court's instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). This presumption is refutable, but the appellant must rebut the presumption by pointing to evidence in the record indicating that the jury failed to follow the trial court's instructions. *Id.*

Permissible jury argument is limited to four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). Generally, when an argument falls outside these areas, error occurs. *Id.* However, an instruction to disregard the argument generally cures the error. *Id.* Only offensive or flagrant error will mandate reversal after a trial court's instruction to disregard improper jury argument. *Pena v. State*, 554 S.W.3d 242, 252 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider (1) the severity of the misconduct (*i.e.*, the magnitude of the prejudicial effect), (2) the measures adopted to cure the misconduct (*i.e.*, the efficacy of any cautionary instruction), and (3) the certainty of conviction absent the misconduct (*i.e.*, the strength of the evidence supporting the verdict). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Pena*, 554 S.W.3d at 252.

**Analysis.** As set forth above, the motion for mistrial in this case concerned the prosecutor's assertion in closing argument that appellant had not apologized "even now" to police officers for misleading them. Appellant maintains that this assertion improperly commented on appellant's exercise of his Fifth Amendment Right to remain silent. *See* U.S. Const. amend. V. We agree with this contention as, apparently, did the trial judge as she instructed the jury to disregard the statement. We conclude, however, that the prosecutor's statement was not so harmful as to necessitate reversal.

We begin by noting that the statement likely did not have a great prejudicial impact. *See Mosley*, 983 S.W.2d at 259. The State was entitled to point out that appellant had changed the version of events he provided to police, and the video recording of appellant's statement did not show him apologize to officers for the misleading statements. The prosecutor, however, went too far in pointing out that appellant did not apologize at trial. The brief reference was not repeated or otherwise emphasized. *See Archie*, 221 S.W.3d at 700 (noting brevity of prosecutor's reference to defendant's right to remain silent in concluding no harm resulted in denying mistrial); *Dukes v. State*, 239 S.W.3d 444, 450 (Tex. App.—Dallas 2007, pet. ref'd) (same).

We next recognize that the trial court promptly instructed the jury to disregard the mention of appellant's failure to testify. *See Archie*, 221 S.W.3d at 700; *Dukes*, 239 S.W.3d at 450. We presume absent evidence to the contrary that the jury was able to follow that instruction. *See Thrift*, 176 S.W.3d at 224.

Lastly, we consider the strength of the evidence of appellant's guilt. Appellant admitted to shooting Tucker but claimed Tucker was attempting to grab appellant's gun at the time as part of a carjacking effort. Appellant's credibility, however, was cast into doubt by his having provided inconsistent statements to

7

police about certain matters, particularly regarding his activities immediately after the shooting. Additionally, an eyewitness refuted key aspects of appellant's version of events, suggesting that Tucker had backed away from appellant's truck just before the gunshot and there was no struggle between the men. The evidence regarding appellant's behavior after the shooting was also noteworthy. Instead of going home or calling the police, appellant sped around looking for the man who had taken his Xanax pills and even shooting at someone he apparently thought might be that man. And the medical examiner testified that Tucker's hands did not show signs that they were on a gun when it fired as appellant stated. Although not overwhelming, the evidence of appellant's guilt was strong.

In light of the factors set forth in *Mosley*, we conclude that the trial court's instruction was sufficient to ameliorate any harm from the prosecutor's comment. 983 S.W.2d at 259. Accordingly, the trial court did not abuse its discretion in denying appellant's request for a mistrial, and we overrule appellant's first issue.

### *Motion to Dismiss Indictment*

**Governing Law.** In his second issue, appellant contends that the trial court erred in denying his motion to dismiss the indictment due to alleged prosecutorial misconduct during trial, primarily about statements the prosecutor made in closing argument suggesting certain witnesses were too scared of appellant to testify. Generally, to complain about trial error on appeal, a criminal defendant must preserve that error by making a timely and sufficiently specific objection, request, or motion in the trial court. *See* Tex. R. App. P. 33.1(a). This is specifically true for allegations of prosecutorial misconduct. *See Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995). "The proper method of preserving error in cases of prosecutorial misconduct is to (1) object on specific grounds, (2) request an instruction that the jury disregard the comment, and (3) move for a mistrial." *Id*.

8

Appellant concedes in this case that his counsel did not make a timely objection, did not request the jury be instructed to disregard the prosecutor's statements, and did not request a mistrial. Instead, counsel waited until the jury retired for deliberations and moved to dismiss the indictment. On appeal, appellant relies on cases proposing that "serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process" and results in "deprivation of fundamental fairness and due process of law" may entitle a defendant to a new trial even if "few objections have been perfected." *E.g., Rogers v. State*, 725 S.W.2d 350, 359-60 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (citing *Berger v. United States*, 295 U.S. 78, 84, 88 (1935); *Ruth v. State*, 522 S.W.2d 517 (Tex. Crim. App. 1975); and *Kerns v. State*, 550 S.W.2d 91 (Tex. Crim. App. 1977)); *see also Artz v. State*, No. 14-17-00973-CR, 2019 WL 1442069, at *7 (Tex. App.—Houston [14th Dist.] Apr. 2, 2019, no pet.) (citing *Rogers* but declining to conclude prosecutorial misconduct occurred where defendant failed to preserve error at trial); *Jiminez v. State*, 298 S.W.3d 203, 214 (Tex. App.—San Antonio 2009, pet. ref'd) (same).

Appellant, of course, is not requesting a new trial but dismissal of the indictment. Courts do not possess general authority to dismiss a charging instrument without the prosecutor's consent but may do so in specific circumstances. *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003). "While a trial court may dismiss a charging instrument to remedy a constitutional violation, the dismissal of an indictment is 'a drastic measure only to be used in the most extraordinary circumstances.'" *Id*. at 817 (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)). In other words, a court may dismiss an indictment without the State's consent only when "necessary to neutralize the taint of the unconstitutional action." *Id*; *see also Frye*, 897 S.W.2d at 330 (affirming

9

dismissal of indictment where prosecutor contacted defendant directly—even though defendant was represented by counsel—and obtained information regarding defense strategy and evidence to defendant's detriment).

**Analysis.** In support of his allegation of prosecutorial misconduct, appellant primarily points to the prosecutor's closing remarks in which she suggested that two people whom police interviewed had declined to testify at trial because they were afraid of appellant. He maintains that, in reality, at least one of the witnesses in question (Jenkins) was in jail at the time of trial and was simply not called to testify, perhaps because the State was concerned he could be impeached with a recent robbery conviction. Appellant contends that in making these remarks, the prosecutor intentionally misled the jury.

While the prosecutor's actions are troubling, appellant's contention is not fully supported by the record. Although Jenkins was apparently in jail under a bench warrant, there is no indication in the record that Jenkins and Celestine were not afraid to testify. As the prosecutor indicated in her remarks to the jury, there was evidence appellant shot at or intended to shoot at Celestine for taking his Xanax and had a confrontation with Jenkins in the corner store after shooting Tucker. Moreover, during the discussion after the jury retired to deliberate, the prosecutor told the judge that Tucker's family had informed her that Jenkins did not want to testify because he was scared.

As mentioned, appellant posits that the real reason Jenkins was not called to testify was that he could then be impeached with a robbery conviction that occurred during the pendency of appellant's case. Appellant's trial counsel, in fact, told the judge that a previous prosecutor had represented that she was not going to call Jenkins for that very reason. However, that a previous prosecutor made this remark does not establish that the prosecutor who actually tried the case felt this

10

way or that Jenkins was not afraid to testify.

Appellant additionally complains that the defense was never told that Jenkins was in jail. Appellant does not explain, however, how this equated to prosecutorial misconduct. The prosecutor informed the trial court that this information was readily available by viewing the files for appellant's case on the clerk's e-filing system.

None of this is to say that the prosecutor's remarks were proper; it is just to point out that the evidence does not establish that the prosecutor intentionally misled the jury. Moreover, even if we were to conclude that this single brief comment constituted prosecutorial misconduct, the authority appellant relies upon contemplates "pronounced and persistent" unobjected-to misconduct "with a probable cumulative effect on the jury." *Rogers*, 725 S.W.2d at 360-61; *see also Penry*, 903 S.W.2d at 764 (holding that defendant's failure to timely object to alleged instance of prosecutorial misconduct waived issue).

As support for his contention that prosecutorial misconduct was a persistent problem throughout the proceedings, appellant mentions several occurrences, including: other statements in closing argument that the jury was instructed to disregard, including the statement discussed above under appellant's first issue; a couple of comments and questions to witnesses that objections were sustained against; and concerns relating to a prior trial setting. Each of the occurrences appellant raises, however, was dealt with by the trial court or otherwise rendered moot in some manner, i.e., objections sustained, the jury instructed, a mistrial granted.[1] Moreover, the cited occurrences did not demonstrate such "serious and

---

[1] For example, in regard to the previous trial setting, appellant asserts that a prior prosecutor attempted to confuse defense counsel regarding the trial date, failed to tender evidence timely, and made improper remarks to the venire panel during voir dire, which the panel was instructed to disregard. A mistrial was subsequently declared, however, and the panel

11

continuing prosecutorial misconduct" that they resulted in "deprivation of fundamental fairness and due process of law" necessitating reversal. *Jiminez*, 298 S.W.3d at 214; *Rogers*, 725 S.W.2d at 359-60. Accordingly, we overrule appellant's second issue.

We affirm the trial court's judgment.


/s/  Frances Bourliot
     Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

was dismissed. Appellant fails to explain how any conduct by the prior prosecutor in regard to the previous trial date prevented him from receiving a fair trial in the proceedings that resulted in his conviction.